25 years ago, when he was barely 18 years old, Mr. Ledesma waived his right to a jury trial and was convicted of second-degree murder after a one-hour bench trial that involved only two unprepared witnesses. At the time, his conviction did not make him deportable. Seven years later, Congress passed the Anti-Drug Abuse Act of 1988, which established for the first time the aggravated felony ground of deportability and expressly provided that only aggravated felony convictions that occurred on or after November 18, 1988 could render an alien deportable. The question before the Court today is whether Congress has unambiguously provided with unmistakable clarity that the aggravated felony ground of deportability can be retroactively applied to aliens whose convictions occurred before November 18, 1988. Counsel, if the statute is ambiguous, shouldn't we defer to the BIA's interpretation? Well, the BIA interpreted it in matter of Lettman. The Board ruled that IMAC Section 602C effectively expanded the aggravated felony definition, I mean, ground of deportability, excuse me, to apply to aliens with pre-1988 convictions. But the Board completely failed to apply the full Landgraf analysis. It never went to the next step. It found that that section was ambiguous. It didn't find that Congress had spoken. In fact, I'm going to quote, the Board said on page 372 of Lettman, 602C is, quote, an ambiguous provision which is capable of different readings. I have two main questions about this that I'd like you to address. One of them is that, as I understand it, or at least this is a question, the provision of the 1988 statute regarding the effective date event was actually not in 241A, was it? I'm sorry, Your Honor. The provision was not actually in 241A, was it? In other words, let's assume I buy, because I largely do, your whole reference about what such section was and so on. But is the relevant language in the 1988 statute, the one that you need, which is the language that says that it doesn't apply to anything, any conviction before the effective date, is that in 241A? That language is not in 241A, but there is nothing saying that doesn't address the issue of whether the current language can be retroactively applied. That's a separate issue under Landgraf. I'm not understanding what you're saying. If the language that you want to incorporate, as I understand it, my understanding is that your whole argument turns on the fact that the 1990 statute preserved what was in 241A, the timeliness provisions of 241A of the prior statute, right? And one of the so the question is, is the relevant timeliness provision in the right place? Or was it in 241A? The relevant timeliness provision is in Section 7344B. Right. And our argument is that, well, it's two parts. The most important part is that there's been no statute enacted since then that provided with unambiguous, you know, language that that section could be, that the expanded ground for aggravated felons could be retroactively applied. How about Section 321C of RI, right? Section 321C does not provide with unambiguous clarity that that can be retroactively applied. Which is regardless of when the conviction occurred. That language applies to, I'm sorry, are you talking about Section 321B? Yes. The C. 321C is, can you read me that provision, Your Honor? I think it's in the definition of the section. Okay. So that is, that's a distinction we're making between the definition and the consequences. And matter of AA, the Board held that there is that distinction. So insofar as that refers to just the definition, there's nothing saying that the consequences of that felony ground can be retroactively applied. Furthermore, this Court's decision in Aragon Aon is an opposite, because in that case the alien was convicted in 1992. And therefore, the Court never had the opportunity to address whether Congress had unambiguously provided that the aggravated felony ground could be retroactively applied to aliens with convictions before 1988. But doesn't 321C, does that mean that the definition of aggravated felony that includes murder applies in this, in a removal proceeding, which was instituted after Ira Ira? No. Well, it provides that the definition applies. Yes, Your Honor. We concede that it provides the definition applies. We are drawing a distinction between the definition and the consequences. I understand, but you're saying it's, it's, it's. For example, Your Honor, if I might point you to another provision of the statute. If you look at section 101F8, which precludes a finding of good moral character with respect to anyone convicted of an aggravated felony, this Court has found that that applies to conduct occurring after November 29th, 1999, which is the, I'm sorry, 1990, which is the effective date of the statute. Even though it includes the same language, the same thing of, of aggravated felony at any time, that's, that's. That was the very recent case. It has the very same language. Right. That was the very recent case. This isn't the case. I'm just looking at the plain language of section 101F8. This has to do with good moral character. And it, basically, in, I'm sorry, the case of Hovest-Pion, where the Court found that, that it applies only to conduct occurring after the effective date of the statute, despite the language of the statute itself. Wasn't the reason that the Court hadn't looked beyond the definitional section in 1988 to determine the temporal limitation of, of aggravated felony definition because the definitional section did not contain a temporal provision, as opposed to IRA-IRA, which does have a definition, which does? Well, even if it does, Your Honor, what we're saying is that that definition is, is distinct. There's different, there's parts of the statute where Congress specifically talks about definitions and parts where Congress talks about consequences. And here Congress chose to put that temporal limitation in the definition section. It could have put it in the consequences section, but it didn't. And there's other, there's other areas where a definition, the retroactive application of the definition might make sense. For example, having committed an aggravated felony in the Bardo Asylum, it's, it's, you know, it, it appears in a number of other situations besides the removal context. Doesn't mean that that can now be a ground for removability for people whose convictions occurred before 1988. Excuse me. Oh, please. The removal provision states simply that any alien shall be removed if the alien is within one or more of the following classes of deportable aliens, period. And that's it. That's how the, that's the. Right. And so there's nothing there that provides with unambiguous clarity that Congress can now go back and retroactively apply that. But doesn't that provision necessarily adopt IRA's enlarged definition of an aggravated felony? Even so, Your Honor, even if it does, that's, I mean, that's completely separate from the retroactivity argument, which is that the government must show that Congress somewhere provided with unambiguous intent that this, that, that this expanded definition can be, the expanded aggravated felony ground can be retroactively applied. And there's nowhere where that has been shown. The government's position is that that's a rejection of any temporal limitation based on the date of the conviction. There, I mean, Congress would have to have said that there is, that, that it can retroactively apply to convictions before 1988. And that, that is not here, Your Honor. What do you do with the Yacoubian case? I mean, why doesn't this court's holding in. Yacoubian didn't address the issue, Your Honor. It assumed without addressing this. This question was not squarely before the court. What about the Hovsepian case? I'm sorry? What about the Hovsepian case? Which is actually the one that troubles me the most. Which aspect of the Hovsepian case? The Hovsepian case, it didn't go into any depth, but in a parallel, with regard to parallel language and the parallel statute, it held that it was, in fact, sufficiently clearly retroactive. Well, Your Honor, this language here is clearly not retroactive. I mean. It's the same language. Section 602C? Yes. It's the same language. Well. It recognized it was the same language. It said it was 602C. Right. Well, Your Honor, there, I mean, there's nothing in that language that is, that makes it retroactive. It's an unbanked case, and it's binding on us, and I want to know why, how we can decide something differently. All I can say, Your Honor, is I believe, you know, there is a, there is a conflict with, with the clear language of that statute, and that. I'm just saying it's wrong. I'm saying it's wrong, Your Honor, and the board should. So I guess you can tell me why half-sepian is not binding on us. I'm, I think we're kind of stuck here. All I can say is that this Court's reasoning in Bellevue, Reno, not this Court, I'm sorry, the Second Circuit's reasoning in Bellevue, Reno, found that it was ambiguous. The board has found that provision to be ambiguous. All right. Let me go back to my other problem, then. So we would somehow get by half-sepian, which is, it's a different statute. It's not the same statute, but I'm not sure what difference that makes. And that's something I really would like to know. But I'm back to my original question. The, the pertinent language says except is otherwise specifically provided in such section, right? And your argument is that such section is 241A, right? Right. If, if that doesn't work, then there is very specific language. There's the rest of D. It's quite the same. No, Your Honor, because D is the effective date of the statute, which is distinct from. I'm sorry, not D. It's the rest of the provision of C. It's the remainder of C, not D. Right. I mean, the interpretation. Do you agree that if the except language doesn't work, we lose? The interpretation turns on the meaning of the phrase such section. And as it used in except. As used in the except clause. Right. That sentence. So that's why I'm going back to my first question, which is, if, if this, if, if the 1988 temporal limitation is not in 241A, how does that help you? I'm not sure I'm understanding your question, Your Honor. The, the temporal limitation in 1988, which you're trying to incorporate and say was, was saved in the 1990 statute, is in what, 7, 7344B, right? It's not in 241A as such, right? The such section language refers to 241A. That's all it could refer to. It doesn't refer to 7344B, does it? No. So how, how are you saving it? Well, Your Honor, we're saving it because it specifically says that except the such section, okay, it says, notwithstanding the amendments made by the section, any alien who is deportable because of the conviction. All right. That first sentence is irrelevant. It's the next one, right? So except is otherwise specifically provided in such section. Such section refers back to the previous clause, which is section 241A, as in effect before the date. Okay. So that, to me, that, I mean, that preserves the language. That preserves the exception in, in that statute. But we just established it wasn't in that section. That's what I'm having a problem with. It was, it was a note or something, but it wasn't actually in the section. It wasn't codified. It wasn't in the section. Well, I, I, I want to just emphasize that, you know, the BIA itself has said that this provision is ambiguous. And as such, you know, you need to apply the Landgraf analysis. This, this language, I mean, it's not providing unambiguous, it's not providing with unambiguous clarity that Congress has intended to retroactively apply the aggravated felony ground. And the board has found it ambiguous, the Second Circuit has found it ambiguous. Havespian analyzed a different statute. To be honest with you, I don't know if the language is exactly the same as this one, but it's a different statute. And this court has not yet addressed the ambiguity of this statute. But under Landgraf, I mean, you need to move on to the second step. This is ambiguous. And there's clearly a retroactive effect here because Mr. Dang waived his, I mean, Mr. Ledesma waived his right to a jury trial in reliance on the fact that, you know, if convicted, he would not be deportable. He also had a vested right in his permanent residency that he was deprived of. And he also, there were new legal consequences attached to his underlying crime. And, you know, you don't need to show reliance, you don't need to show that he relied on that he chose to commit his crime thinking he wouldn't be deportable. You know, what we're saying is that there are new legal consequences for a past act. In Landgraf, sexual harassment was unlawful before, it was unlawful after. There were just additional legal consequences. And the court found that to have an impermissible retroactive effect. The same thing here. Thank you very much. Good morning, Your Honors. May it please the Court, my name is James Grimes. I'm here on behalf of the Attorney General. In our view. You've got to lead off and tell us why Ira Ira only changed the definition of aggravated felony and not the effect. That's the appellant's position. That is the appellant's position, Your Honor. In our view, Aragon answers that. This Court's decision in Aragon answers that question because Aragon says Congress's intent in 321 was to make aliens deportable for crimes that predated Arrera. Aragon wasn't decided in a vacuum. Aragon wasn't dealing with a pre-1988 conviction as to which this question even arises. In other words, it was in 1988 that aggravated felony as a ground of deportation came into the statute, leaving aside all the other complications of that 1988. Right? Yes, Your Honor. So for a crime committed before 1988, aggravated felony wasn't a ground for deportation. And the question is whether the definition then helps as applied to a vacuum. I mean, the fact that the aggravated felony definition can only go back as far as the deportation provision. If there was no deportation provision, what are you attaching it to? Well, this Court said that the intent of Congress's intent was in 321, B and C, was to make aliens removable, or the old language is deportable, despite the fact that their crime predated Arrera. So whenever their crime occurred. Right, because that was a 1992 conviction as to which there was an aggravated felony ground of deportation. But if you're pushing it back pre-1998, what are you attaching it to? The definition, you have a definition attached to a zero. I'm attaching it to 1227A2Aiii, which says that aliens who were convicted of an aggravated felony at any time after entry are removable. And 321B says it tries to eliminate any effective dates. It says we're eliminating any previous effective date, and this applies regardless of whether the conviction was entered on, after, or before this date. So it's not concerning itself with the amendments in 1990 or the amendments in 1998. I don't see how you escape having to get the operational provision pushed back before 1988 before you can do that. That's really what the question is here. The operational provision says you're removable if you're an aggravated felon, but that term doesn't mean anything standing by itself. To understand what that term means, we have to go to the definition, and the definition specifically includes aliens who were convicted at any time. The appellate cites Lopez-Castellanos for the proposition that we have accepted the distinction between definition and consequences of aggravated felony convictions. I don't know that Lopez-Castellanos actually said that. It did say on that definitional question our law is clear, but the majority of Lopez-Castellanos is dicta because the holding is at the end is that the court doesn't have jurisdiction. The dispositive issue is the court doesn't have jurisdiction over the good moral character finding, and so none of that, none of those points are actually relevant to the court's ultimate decision, which is it didn't have jurisdiction. That's not the way we tend to look at dicta in this circuit. The court wrote the opinion in that direction, did decide some things along the way, and only then came to the jurisdictional conclusion. That's true, and it didn't say there was a distinction. It just said on that point that our law is clear, and the law is clear. It did say there was a distinction. It said specifically there was a distinction. It didn't say there is a distinction between it. It just said on that definitional point our law is clear. That was what it said, and it cited Aragon, and what Aragon says is that the question Aragon was is this alien deportable? Well, suppose we didn't agree with you. Could you discuss the two things that I was interested in, which are, A, does the occlubian, obscepian, or obscepian by itself preclude this argument, and second of all, the Petitioner's argument, and second of all, if one assumes, because I do think it's a better reading, that such section is 241A, not as it existed before, not as it existed afterwards, what are the consequences of that? Your Honor's first question is, does the court's obscepian, and I, and you'll Obscepian, obscepian. Exactly. Yacobian obscepian deals with section 602C, which is the issue here. Yes, but it was pre-landscraft. It doesn't do a landscraft analysis. But obscepian does. I would disagree with that, Your Honor, if I might. It wasn't pre-landscraft. All right. It wasn't pre, but it doesn't do a landscraft analysis. And I would disagree with that as well. And it goes through the same analysis this court went through in Cordes, where this court said that it was rational to apply section 321 to make aliens removable for offenses that predated Herrera. So that's a due process analysis, because the landscraft, at least at its first step, is a statutory construction analysis. So that issue of whether or not the rationally related issue is the due process question with respect to immigration legislation. And what Yacobian first found was that, yes, this did make this alien removable, deportable for defense, despite the fact that the alien would not previously have been deportable. So I would disagree that the Yacobian court assumed that. Wait a minute. Yacobian didn't say anything about the 1996 statute. That wasn't what it was. It was before then. I'm not talking about 1996. I thought Your Honor's question was Yacobian was about 1990s statute. Exactly. But it did not do a landscraft analysis. Well, what it first said was, well, the first question with respect to landscraft is has Congress spoken to the issue. And the court said, it certainly didn't cite landscraft, but the first the court said this provision is retroactive. This provision makes this alien removable. Anyway, the same issue came up again in Huff-Sepian. I don't know why nobody's noticed this. And it was discussed in Huff-Sepian, although briefly. And that was an en banc case. So whatever's true of Yacobian is sort of superseded at this point. Yes, to the extent that they're contrary, that would be true. They're not contrary. They're consistent, pretty much. So my question is, why is there anything about the difference in the statutes that can matter? And also, Huff-Sepian was more summary. It doesn't really deal with the problem, but it does cover it. It is what it is, Your Honor. That's true. I mean, it says such But you don't know what it is because you haven't looked at Huff-Sepian in this regard, because you haven't argued Huff-Sepian. I'm sorry, Your Honor? You have not argued Huff-Sepian on this issue. Well, I mean, we believe that ARIRA controls the question, but as far as Yacobian says, that the provision is retroactive, and it says such section as amended by M. Act will apply regardless of the fact that the acts occurred prior to this enactment. So even if the interplay between Of course, Yacobian has a little bit of a problem, which is that it leaves out the in quoting the relevant language, it has three dots exactly where the relevant language is. It says except is otherwise specifically provided, and then it has three dots, so it doesn't say by such section. That's true, but I can only say what the statute said. What the provision said, such section as amended by M. Act. It applies retroactively. And, you know, as a number of courts have said, Congress intended to comprehensively revise in M. Act the grounds for deportation, and that's what it was trying to do, so it would be somewhat incongruous. But you're resting primarily on the 1996 statute. Yes, Your Honor. And I would like to make a point about that. 321C was addressed in Aragon, the provision that says that the new act will apply to actions taken after a RERA is effective, and, of course, finding Mr. Ledesma removable is an action taken after the passage of a RERA. And that provision says that it applies regardless of when the offense occurred. So you have that specific language in 321C, you have the language in 321B as well, indicating, and this Court said in Aragon, that that provision, 321C, means that the Attorney General could apply it in all cases in immigration proceedings, which this, of course, would be one of those cases. So we would believe that a RERA does control the question. You don't need to get to the interplay between the ADAA and M. Act. Have any of the courts that have looked at this taken that view? I think maybe one has. Have any of the courts that have looked at this complicated mess taken this view? Bell v. Reno did not. Bell v. Reno relied on 602D. That issue, yes. I'm sorry, Your Honor. You're talking about the RERA issue? Have any of the courts that have dealt with the question of pre-1988 convictions, pre-1988 convictions, because Aragon did not, taken the view that the 1996 statute is dispositive? I'm not sure if there's a – that deals with the question of whether or not – There is no case, unless we have CP and Yacoubian. But there's no case specifically about the aggravated felonies. What about another court? Are there any? I don't know. I can't answer Your Honor's question. So I would just say that it really wouldn't matter whether it was 1988, 1980, 1970. 321B and C indicate that Congress intended those provisions to apply no matter when the convictions – I think Bell v. Reno was dealing with M. Act, the interplay between M. Act and ADA. And I don't know why they went through that. I don't know why anyone dealt with that. But if you look at Kuhaly from the Second Circuit, which came out afterwards, Kuhaly says that that's no longer relevant, citing the First Circuit's decision in Sosa. There no longer is a distinction between the definitional provisions. The expanded definition of aggravated felony is also important in other immigration areas, such as asylum and naturalization, aside from movability. Why shouldn't we conclude that IRA, IRA? I don't know why it wouldn't – why it would apply there and wouldn't apply in this case, Your Honor. My time is almost up. Why don't you say it also applies – it implicates removability when it's important in these other areas? I'm sorry, Your Honor? Why should we say it's important for deportability when her argument is that it deals with other areas? I believe, if I understand my colleague's argument, it is that it would apply retroactively in those instances but not this instance. And I'm not sure why that would be the case. And I believe Congress has made that distinction. My time has expired. I'm sorry. I won't be able to – Thank you very much. Thank you for your arguments. Thank all of you for your arguments on this incredibly complicated case. I will give you 30 seconds. Your Honor, I just wanted to request 14 days to submit letter briefs on the Huffazett P.M. issue. No more than 14 days. We'll let you know when we're going to do that. Thank you. Thank you. The Court will take attendance. The Court is now in recess for 10 minutes. One too many. Thank you.
judges: D.W. Nelson, Cowen , Berzon